HOBSON, Acting Chief Judge.
George Parham, plaintiff below in a personal injury action, appeals a final summary judgment order rendered in favor of East Bay Raceway (“Raceway”) and its insurer, K & K Insurance Agéncy (“K & K”), defendants below. We reverse and remand because genuine issues of material fact exist. Holl v. Talcott, 191 So.2d 40 (Fla.1966).
Parham alleged in a complaint that he sustained injuries upon being struck by a *400 racecar at the Raceway while he was near the pit area as a business invitee. He asserted therein that the proximate cause of his injuries was negligence on the part of the Raceway, and demanded a trial by jury. The record on appeal does not contain the answer and affirmative defense(s) of the Raceway and K & K. However, it can be implied that the Raceway and K & K raised as an affirmative defense that, prior to being injured, Parham signed a standard form which released the Raceway from all alleged liability. (The record also does not contain any reply thereto by Par-ham.)
The Raceway and K & K thereafter submitted a motion for summary judgment. The court below granted the motion after examining the pleadings, depositions, affidavits and documents and conducting a hearing. It found in its final summary judgment order that, before entering the area where the accident occurred, Parham signed his name on a release agreement after having been given a full and complete opportunity to review the agreement; that the accident happened in a restricted area accessible only upon the payment of a fee and the execution of the agreement; and that the language of the agreement was both clear and unambiguous.
Reviewing the record in a light most favorable to Parham, the nonmoving party below, as we must, the following factual scenario may be drawn:
Parham was admitted to the grandstand area of the Raceway upon payment of the regular admission price. After remaining there for a short while, he proceeded to a ticket shack located by a gate leading to the Raceway’s restricted areas, which include the pit area.
Upon arriving at the shack, Parham, who had never been inside the grounds of the Raceway before, and who thus was unfamiliar with the procedures to gain admission to the restricted areas, advised the Raceway employee sitting inside the shack that he wished to enter the pit area. The employee informed him that in order to enter he needed to pay a dollar for “insurance,” sign his name on a form for “insurance,” and then get his hand stamped.
Parham thereupon paid a dollar to the employee, who then presented him with a form attached to a clipboard. The upper half of this form consisted of language releasing the Raceway from all liability in the event of an injury to a signatory in any restricted area. The lower half contained signature lines, some of which had been filled in. The only portion of this form visible to Parham at the time was the lower half; the upper half was covered by a form of the same size which had been folded in half. (It was learned after the accident that this folded form was an identical release form which had already been filled with signatures.) Upon being shown by the employee where to sign, Parham affixed his signature on a signature line and had his hand stamped.
Parham then walked past the.shack to another gate bordering the oval racetrack. This gate was connected on both sides by a wall surrounding the racetrack. While waiting for a race to finish so that he could enter the gate to get into the pit area located inside the racetrack, he was struck and injured by a racecar which crashed through the gate.
Parham contends on appeal that genuine issues of material fact exist for the trier of fact as to whether he signed the release form without a misrepresentation and/or concealment on the part of the Raceway employee which dissuaded or prevented him from reading the form before signing it. The Raceway and K & K respond that the issue at hand is not one of fact, as Parham claims. They believe that the issue is instead one of law: whether one may avoid a contract he has signed on the ground that he did not read it before signing it, despite having been allowed an opportunity to read it before signing it.
We disagree with the suggestion of the Raceway and K & K that the issue here is purely one of law. To be sure, it is generally the duty of a party to learn and understand the contents of a proposed con *401 tract before he signs it. Pepple v. Rogers, 104 Fla. 462, 140 So. 205, 208 (1932). It thus follows that a party to a written contract cannot defend against its enforcement on the sole ground that he signed it without reading it. All Florida Surety Co. v. Coker, 88 So.2d 508, 510 (Fla.1956). However, the mere existence of an opportunity for a party to know the contents of a proposed contract is not sufficient by itself to infer constructive notice where the party justifiably relies to his detriment upon a misrepresentation by the other party about the nature of the proposed contract. Morris v. Ingraffia, 154 Fla. 432, 18 So.2d 1, 3 (1944). As our state supreme court remarked in Peppel:
[I]f the opposite party has induced one by a trickery, fraud, or any kind of artifice, not to read the contract, with the view of obtaining from him a paper which he could not otherwise have obtained, the right to prove these circumstances, and thereby establish the fact that he was signing an entirely different paper, may be shown for the purpose of relieving such party from the obligation thus fraudulently obtained.
140 So. at 208. Similarly, it commented in All Florida Surety Co. v. Coker, quoting from Morgan v. Mengel Co., 195 Ky. 545, 242 S.W. 860 (1922), that a party to a written contract can defend against its enforcement on the ground that he signed it without reading it if
he aver [sic] facts showing circumstances which prevented his reading the paper, or was induced by the statements of the other parties to desist from reading it.
88 So.2d at 510. Likewise, it stated in Allied Van Lines, Inc., v. Bratton, 351 So.2d 344, 347-48 (Fla.1977), that a contract is not binding if
one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract ....
It is settled, of course, that the question of whether fraud existed in the obtaining of an instrument is one of fact to be resolved by the jury. Casey v. Welch, 50 So.2d 124 (Fla.1951); Winter Park Telephone Co. v. Strong, 130 Fla. 755, 179 So. 289, 296 (1938).
In the case at bar, a genuine issue of material fact exists for the jury as to whether the Raceway employee at the ticket shack leading to the restricted areas misrepresented to Parham that the contents of the release agreement concerned the matter of “insurance” and/or concealed the contents of the agreement from him. If the jury finds that the employee committed either or both of these acts, a genuine issue of material fact will remain as to whether one or both of these actions dissuaded or prevented Parham from exercising his opportunity to read the release form before signing it. If the jury finds that Parham was dissuaded or prevented from doing so, the agreement is voidable. The negligence issue will then need to be addressed and resolved.
Accordingly, we reverse the final summary judgment order and remand for further proceedings not inconsistent with this opinion.
REVERSED and REMANDED.
SCHEB and DANAHY, JJ., concur.