ALTENBERND, Judge,
 

 Dissenting.
 

 Jonathan A. Fuss appeals a final summary judgment entered in favor of David C. Gross concerning the sale of two funeral homes in June 1997. Mr. Fuss believes that Mr. Gross, as his partner in these sales, defrauded him and engaged in self-dealing. He believes that Mr. Gross should be required to pay him a larger share of the sales proceeds. The trial court granted summary judgment, finding that the claims were barred by a statute of limitations and that Mr. Gross was entitled to a judgment because there was no issue of fraud even if the time for the lawsuit had not expired. I disagree with both legal decisions.
 

 For several years ending in 1997, Mr. Fuss and Mr. Gross jointly owned the Beth David Funeral Home. Mr. Gross solely owned the Gross Funeral Home. The men decided to sell these funeral homes and concluded that it would be better to sell them to one buyer at the same time. Mr. Gross allegedly assured Mr. Fuss that the two homes had approximately equal value of about $1.5 million. Mr. Fuss apparently cancelled one potential sale, and the two men agreed that Mr. Gross would take the lead in negotiating a future sale.
 

 Mr. Gross located a willing buyer and arranged for the preparation of contracts of sale. The jointly owned funeral home was to be sold for approximately $1 million. Mr. Gross allegedly assured both Mr. Fuss and Mr. Fuss’s attorney that the two homes were being sold for essentially the same price, but he refused to give them a copy of the documents associated with the sale of his own funeral home. Mr. Fuss’s attorney advised him that it was very unusual for Mr. Gross to refuse to disclose the terms of the other sale and that it was up to Mr. Fuss to decide whether to trust Mr. Gross and proceed
 
 *1083
 
 with the sale. Mr. Fuss decided to proceed with the sale.
 

 Following the sale, Mr. Fuss did little or nothing to discover the terms of the other sale. In June 2002, during trial testimony in other litigation, Mr. Gross was required to answer a question, disclosing that he sold his own home for $2.1 million and the jointly held home for $1 million.
 
 [1]
 

 Mr. Fuss filed this lawsuit on May 12, 2008, alleging that he had been defrauded. An action for fraud must be filed within four years. § 95.11(3)(j), Fla. Stat. (1995). This period, however, is rarely measured from the accrual of the cause of action because an action for fraud can be tolled for as long as twelve years. § 95.031(2), Fla. Stat. (1995). It runs from the point when the plaintiff either discovers or should have discovered the facts giving rise to the cause of action with the exercise of due diligence.
 
 Id.
 
 As a result, one measures a discovery statute of limitations backwards from the date the lawsuit is filed. Thus, the statute of limitations for fraud would bar this action only if it can be said that Mr. Fuss should have discovered that he had been defrauded before May 1999.
 
 [2]
 

 The trial court relied on
 
 Brooks Tropicals, Inc. v. Acosta,
 
 959 So.2d 288 (Fla. 3d DCA 2007), for the proposition that Mr. Fuss knew enough at the time of the closing for the statute of limitations to begin at that time. In
 
 Acosta,
 
 the documents provided at the similar closing revealed enough information to allow the plaintiff to perform a mathematical calculation and determine that he was being paid less than his fair share. By contrast, the information at closing in this case did not provide information disclosing any fraudulent conduct, much less that Mr. Fuss was being paid about $250,000 less than an even split.
 

 I agree that Mr. Fuss was put on notice at the time of the closing that he may have a claim against Mr. Gross. His decision not to engage in further investigation at that time does not help his claim. Nevertheless, I disagree with the trial court and my colleagues that the statute of limitations in this case commenced as a matter of law at the time of the closing. Instead, I conclude that the issue is whether Mr. Fuss could have discovered the facts giving rise to his claim by the exercise of due diligence during the roughly twenty-three months between the closing and the commencement of the four-year period that is set by measuring back from the date when he filed his lawsuit.
 

 This court has previously held that a movant must “conclusively demonstrate that there is no disputed issue of material fact as to when the non-moving party discovered or should have discovered the invasion of his or her legal rights.”
 
 Keller v. Reed,
 
 603 So.2d 717, 719 (Fla. 2d DCA 1992). Ordinarily, when a person should have known such facts is a question for the trier of fact.
 
 Id.
 
 at 720;
 
 see also Halkey-Roberts Corp. v. Mackal,
 
 641 So.2d 445,
 
 *1084
 
 447 (Fla. 2d DCA 1994);
 
 Aprile v. Suncoast Schs. Fed. Credit Union,
 
 596 So.2d 1290, 1293 (Fla. 2d DCA 1992);
 
 Harr v. Hillsborough Cnty. Mental Health Ctr.,
 
 591 So.2d 1051, 1054 (Fla. 2d DCA 1991).
 

 Mr. Gross simply has not established for purposes of summary judgment that Mr. Fuss could or should have discovered the facts of the alleged fraud during the relevant window of time. It is obvious from the earlier trial transcript that Mr. Gross was never going to volunteer these facts to Mr. Fuss. The record currently does not establish that the critical price disparity could have been discovered from any public record. It is unclear to me what type of lawsuit Mr. Fuss could have filed shortly after the closing as a vehicle to discover this information. Mr. Gross has not been a very cooperative defendant in this lawsuit, and I cannot conclude as a matter of law that Mr. Fuss would have discovered this information in another lawsuit within the relevant twenty-three months. Accordingly, I believe the trial court erred in relying on
 
 Acosta
 
 and that a summary judgment based on the statute of limitations was not authorized on this record.
 

 The order on appeal also finds that Mr. Fuss did not “reasonably rely to his detriment on anything that [Mr. Gross] said or did.” The trial court explained that Mr. Fuss closed the transaction “with knowledge that the deal might not be what he believed it was.” I simply conclude that this reasoning is incorrect.
 

 There clearly is an issue in this case as to whether Mr. Fuss sustained “detriment” as a result of the terms of the two sales. There appears to be a $250,000 imbalance between what Mr. Fuss was promised and what he received. It is at least an unresolved question of fact whether the buyer would have adjusted these terms to equalize the two sales if Mr. Fuss had known they were unequal. When a partner in such a transaction gives his word, I do not conclude that the law declares that the other partner is unreasonable, as a matter of law, in relying on his partner’s representations. There is an issue of fact whether Mr. Fuss reasonably relied to his detriment on the factual representations of Mr. Gross.
 

 Accordingly, I would reverse and remand for further proceedings.
 

 [1]
 

 . The transcript of this disclosure is revealing. The trial judge ordered Mr. Gross to answer the question with the jury in the box. He repeatedly refused to answer. The trial court removed the jury and had further discussions with Mr. Gross. Finally, Mr. Gross agreed he would answer the question, but that he "would have to think for a minute.” There are five pages of transcript between the question and the answer: “I believe it was two point one million.”
 

 [2]
 

 . This is not a case involving "delayed discovery,” where the tort is deemed not to have accrued until the later date. It is a case in which the commencement of the limitations period is tolled due to the defendant’s fraudulent concealment of the necessary facts.
 
 Cf. Hearndon v. Graham,
 
 767 So.2d 1179, 1185 n. 3 (Fla.2000) (discussing these concepts in another context).